IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jane Doe | C/A:    2:23-cv-04530-RMG |
| PLAINTIFF, | |
| vs. | |
| CITY OF NORTH CHARLESTON, and Det. Paul Schoolfield, individually an in his capacity as an officer for the City of North Charleston | **COMPLAINT** (JURY TRIAL REQUESTED) |
| DEFENDANTS. | |

**COMES NOW the Plaintiff, Ms. Jane Doe**, by and through her undersigned attorneys, complaining of the **Defendants, City of North Charleston,** and **Detective Paul Schoolfield** and would at this time respectfully allege and aver before this Honorable Court the following:

## JURISDICTION AND VENUE

1.  An actual and justiciable controversy exists between the parties.

2.  The incident took place in the City of North Charleston, Charleston County, South Carolina.

3.  This Honorable Court has jurisdiction over the parties and the subject matters alleged hereinafter.

4.  The **Plaintiff, Jane Doe** (hereinafter referred to as "**Jane Doe**"), is a 23 year-old, African American female, residing in the County of Charleston, State of South Carolina.

5.  The **Defendant, City of North Charleston** (hereinafter referred to sometimes as "**the City**" or collectively "**Defendants**") is a municipality located in Charleston County, State

of South Carolina. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and jurisdiction over the party.

6. The **Defendant, Det. Paul Schoolfield**, (hereinafter referred to sometimes as "**Schoolfield**" or collectively "**Defendants**") was a Police Detective for the City of North Charleston Police Department and was at all relevant times hereto a resident of the County of Charleston, State of South Carolina.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

8. Accordingly, this Court properly may retain subject matter and personal jurisdiction, and further, this Court is the proper venue.

## GENERAL ALLEGATIONS

9. On or about December 16, 2019, **Jane Doe** and a friend, Ms. J.F., attended a birthday party in North Charleston.

10. At 3:39 a.m. the same morning, an individual, Mr. I.R., reached out to **Jane Doe,** via Facebook Messenger, inquiring if she would like to go out after the birthday party.

11. At 4:00 AM, Mr. I.R. confirmed he was outside, in his vehicle, and was waiting on **Jane Doe** to join him.

12. Later that night, an unconscious J**ane Doe**  was raped by I.R. and another unknown male, who  were later positively identified by **Jane Doe** at a North Charleston Police Department (hereinafter "NCPD") photo lineup.

13. The following day, **Jane  Doe** reached out to Ms.  J.F. via Facebook messenger stating her intention to go to the hospital because she believes that Mr. I.R. and the unknown male that accompanied him had raped her.

14.     **Jane Doe** believed she was raped due to the fact that when she was returned home, she found her clothes inside out and backwards, there was blood and semen on them, and she was experiencing vaginal pain.

15.     In addition, she remembered one of the men saying to the other, as he carried her on his shoulder to the car, that he had "bust in her."

16.     As the texting continued between **Jane Doe** and her friend, Jane Doe learned that her friend had been in contact with Mr. I.R.

17.     Mr. I.R. initially communicated to Ms. J.F. that he and his friend had not touched **Jane Doe**, but then quickly changed his story to admit that he had sex with her but that it was consensual, and he believed **Jane Doe** was bringing false rape allegations.

18.     **Jane Doe** took and sent a video of herself to Ms. J.F. showing her that her singlet type jumper was inside out.

19.     **Jane Doe** went to the Medical University of South Carolina (hereafter "MUSC") and had a SANE exam completed on December 16, 2019.

20.     **Jane Doe** then called the **Defendants** to report the rape.

21.     **Defendants'** intake department told **Jane Doe** that no report could be taken, because **Jane Doe** did not know the precise location of the sexual assault/rape.

22.     **Jane Doe**, with no assistance from **Defendants,** conducted her own independent investigation as to the precise location of the incident using her phone's location history and provided it to **Defendants**.

23.     On or about December 18, 2019, **Jane Doe** met with **Defendant Det. Schoolfield** at **NCPD** for an interview to report the incident.

24.     **Jane Doe** emailed Det. Schoolfield a series of screen shots, text messages, and Facebook messages pertaining to her rape.

25.     Days after the incident Mr. I.R. reached out to **Jane Doe** via text message inquiring why **Jane Doe** was inquiring where he lived and what his name was, all in an effort to intimidate her.

26.     On or about December 23, 2019, **Jane Doe** sent an additional email and texts to Det. Schoolfield with all the evidence she collected, but she would soon become very frustrated by the lack of empathy, interest, and/or progress on the investigation as her continuous calls to Schoolfield, NCPD, and the City of North Charleston were ignored.

27.     After nearly six (6) months of no update and/or progress, on or about May 5, 2020, **Jane Doe** reached out to Schoolfield via text message, expressing her concern and frustration with the indifference and lack of progress made on her case.

28.     **Jane Doe** forwarded the same email to Schoolfield that she had sent months prior, containing evidence of her sexual assault/rape.

29.     **Jane Doe** began calling Schoolfield twice a week to get an update on the investigation.

30. Schoolfield finally responded and instructed **Jane Doe** that this investigation was a "*waiting game,*" and that it would take SLED over a year to analyze the SANE kit, meaning she should not expect to see rapid progress on the investigation of her rape/sexual assault.

31.     After several more inquiries, **Jane Doe** was able to set up an appointment with Det. Schoolfield at her residence, although the meeting would last less than fifteen (15) minutes.

32.     During that Meeting, Schoolfield instructed Plaintiff to stop calling him and NCPD about the investigation, that they were handling it, and that they would contact her if there was an update.

33.     On or about May 21, 2020, **Jane Doe** sent the same email that contained pertinent information regarding her rape to Schoolfield and received *no* answer.

34.     **Jane Doe** would continue to reach out to Schoolfield via phone call, text and email and there was still no response at any time.

35.     On or about February 2, 2022, **Jane Doe** called NCPD to speak with Schoolfield, when she was advised that he had retired.

36.    **Jane Doe** then requested to speak to the detective who was handling her sexual assault case given Schoolfield's departure from the force.

37.    **Jane Doe** was horrified to learn that NCPD claimed it had no knowledge, incident report or file of any case regarding her sexual assault.

38.     NCPD informed **Jane Doe** that no incident report or investigation report had been taken or documented by any member of NCPD staff, including and especially, Schoolfield.

39.    **Jane Doe** made an appointment with Det. Crider of NCPD.

40.     When Det. Crider was unavailable to meet with her, **Jane Doe** met with another officer to take an incident report.

41.     During this meeting, the officer was unable to locate a case number or incident report regarding the incident or the SANE exam, nor was he able to find the results of the SANE exam.

42.     Thereafter, the officer generated a case number and provided it to **Jane Doe**.

43.    **Jane Doe** then forwarded emails to the officer, containing screen shots of messages between **Jane Doe** and individuals related to her rape/sexual assault, the same communications that had been previously sent to Schoolfield.

44.    Unbeknownst to **Jane Doe**, on or about **February 16, 2020**, the Charleston County Sheriff's Office, ("CCSO") had picked up **Jane Doe**'s SANE kit (P1132505109) from MUSC and was given an OCA #2020-003561.

45.    On or about **July 12, 2021,** CCSO destroyed **Jane Doe**s' SANE kit without **Jane Doe**s' knowledge or consent.

46.    **Jane Doe**, by and through her legal representatives requested that the City and/or NCPD investigate (internally or criminally) to determine the reasons for the gross negligence of undertaking an investigation and NCPD's utter failure to take the simplest measures to investigate and preserve evidence in this matter. These requests were denied.

47.    On or about September 8, 2022, NCPD finally conducted a photo lineup where **Jane Doe** positively identified her assailants.

48.    On March 7, 2023, **Jane Doe** was advised by NCPD that the case was at an impasse due to "*insufficient evidence*".

49.    During this entire relevant time period, **Jane Doe** would ***never*** receive any calls, support, voluntary updates, or justice from Tri-County S.P.E.A.K.S., MUSC, CCSO, City of North Charleston, NCPD, or ***any*** victim's advocate group. Rather, she was specifically encouraged by Defendants NOT to reach out and that she would be contacted once there was a development.

**FOR A FIRST CAUSE OF ACTION:**
**(Gross Negligence / Recklessness / Willful & Wanton Disregard for the Rights of Jane Doe)**

50.     At this time, Plaintiff would reincorporate and reallege the allegations contained in Paragraphs 1 through 49 as if they were fully repeated herein.

51.     At all relevant times hereto, the **Defendants** affirmatively undertook and owed a duty of care to **Plaintiff** to follow all internal policies and procedures, directives, and/or applicable municipal and state regulation(s) with respect to investigating known violent crimes, including specifically, the rape of **Jane Doe**.

52.     At all relevant times hereto, the **Defendants** undertook and were under a legal duty to promptly and thoroughly conduct an investigation of **Jane Doe's** rape in order to preserve her right to seek legal recourse against her attackers, to ensure the safety of the community, and to prevent future attacks by the perpetrators.

53.     At all relevant times hereto, **Defendants** undertook and were under a legal duty to investigate and arrest known violent criminals for acts of violence against other members of the community when there exists probable cause for same.

54.     At all relevant times hereto, **Defendants** undertook and were under a legal duty to maintain records of criminal complaints, investigation notes, and to ensure that critical evidence was properly stored and secured for the use in future prosecution of any related crimes.

55.     Furthermore, the **Defendants** affirmatively undertook and were under a legal duty to protect and preserve Plaintiff's property, specifically, the medical specimen provided by Plaintiff in the form of a SANE kit, so as to preserve her right to seek legal recourse against her attackers.

56.     The aforementioned legal duties affirmatively undertaken and owed to **Jane Doe** by the **Defendants** were legal requirements of the **Defendants**, whether imposed by state or municipal regulation, and/or by the **Defendants'** internal written policies and procedures and/or the voluntary undertaking of **Defendants** by and through their agent(s) and/or employee(s).

57.     The aforementioned legal duties were not subject to the discretion of **Defendants**, nor the discretion of its agent(s) and/or employee(s).

58.     **Defendants** took on and falsely led the Plaintiff to reasonably believe the incident was being investigated, but by and through their agent(s) and/or employee(s) breached their legal duties in the following particulars, by way of example, and without limitation:

    a.  Failing to properly investigate citizen complaints of violent crime, including and specifically, the rape of **Jane Doe**;

    b.  In failing follow up on leads regarding the identity of **Jane Doe's** rapists, or to communicate with the victim, **Jane Doe**;

    c.  In failing to arrest suspect(s) for the rape of **Jane Doe** based upon credible information reported by the victim which would have constituted probable cause;

    d.  In failing to abide by, or to act in accordance with, all applicable municipal or state regulation(s) concerning the investigation of violent crimes and/or any internal written policies and procedures governing same;

    e.  Failing to have qualified and experienced detectives investigating claims of sexual abuse;

f.  Failing to truthfully and accurately communicate the status of the investigation to the victims of the crime;

g.  Failing to respond to allegations with the utmost seriousness and urgency;

h.  Failing to abide by internal policies and or applicable law(s) and regulation(s) regarding:

   i.  The proper documentation of an investigation,

   ii.  Conducting proper interviews and investigations of claims of violent crime;

   iii.  The proper handling of evidence so as to avoid its destruction; and,

   iv.  Avoiding concealment, evasion, or misrepresentation in communications with the victims of sexual assault.

i.  In advising Plaintiff that her property—a medical specimen in the form of a SANE kit—was being preserved, protected, and cared for by Defendants or agents of Defendants so as to protect her right to seek recourse against her attackers;

j.  In otherwise acting or failing to act in a grossly negligent, criminally negligent, and/or reckless manner; and,

k.  In intentionally acting or failing to act with a willful and wanton disregard for the safety and lives of others, including specifically, **Jane Doe**.

59.  As a direct and proximate result of the **Defendants'** breach of their legal duty by and through their action(s) and/or omission(s) as described herein, the positively identified perpetrators were never charges and **Jane Doe** was seriously and permanently injured.

## FOR A SECOND CAUSE OF ACTION:
### (Negligent Hiring, Supervision, Training and Entrustment as to The City of North Charleston)

60.    At this time, Plaintiff would reincorporate and reallege the allegations contained in foregoing Paragraphs as if they were fully repeated herein.

61.    At all relevant times hereto, the **Defendant,** by virtue of previous notice, took on and owed a duty of care to **Plaintiff** to follow all internal policies and procedures, directives, and/or applicable municipal and state regulation(s) with respect to the hiring, retention, and supervision of its detectives.

62.    Defendants, by and through their agents and/or employee(s), breached this duty by acting in a grossly negligent manner, reckless manner, or such a manner as evidences a willful and wanton disregard for the rights of others, including:

    a. Using strategies that disproportionately impact African Americans, in violation of federal law, including Title VI and its implementing regulations. (28 C.F.R. §§ 42.101-112)

    b. Failing to make reasonable modifications to their practices regarding individuals with disabilities, in violation of Title II;

    c. Failing to address systemic deficiencies in policies, training, supervision, discipline, control, and accountability structures despite being aware of these structural challenges for many years;

    d. Engaging in a pattern or practice of discrimination, through its use of strategies and other practices in violation of Title VI, which prohibits police practices that create an unjustified disparate impact based on race and other demographic factors;

e.  Treating African Americans victims and community differently than people of other racial or economic backgrounds;

f.  Racial disparities persist relevant to whether an officer reports a complaint. These rates indicate that officers apply a lower threshold of suspicion when dealing with African Americans victims;

g.  Failing to investigate and address instances of officer conduct involving the use of racial slurs and other derogatory language to address or refer to African Americans;

h.  Failing to supervise officers/detectives effectively or hold them accountable for misconduct, contributing to a pattern of police actions that violate the Constitution and federal and state law;

i.  Failing to adequately train and supervise its officers;

j.  Failing to guide officers' activity through effective policies and training;

k.  Failing to collect and analyze reliable data to supervise officer enforcement activities;

l.  Failing to implement early intervention system to identify officers who may benefit from additional training or other guidance to ensure that they do not commit constitutional violations;

m.  Failing to identify, correct, and deter misconduct that contributes to a pattern or practice of violating the Constitution and federal and state laws; and,

n.  In otherwise acting in a grossly negligent manner with respect due care under the circumstances to properly train; supervise; discipline; and hire its employees, agents, and personnel;

63.    **Defendant** knew or should have known that the continued employment of their agents created an undue risk of harm to the public.

64.    **Defendant** knew or should have known that they themselves were grossly negligent in hiring, supervising, or training the employees.

65.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff's Constitutional rights were violated, and she suffered damages including pain and suffering, loss of enjoyment of life, great mental anguish, emotional distress, loss of income, loss of earning opportunities, and any other damages which may be shown during the pendency of this action.

## FOR A THIRD CAUSE OF ACTION:
**(Negligent Infliction of Emotional Distress as to Paul Schoolfield invdividually)**

66.    At this time, Plaintiff would reincorporate and reallege the allegations contained in foregoing paragraphs as if they were fully repeated herein.

67.    **Defendant's** gross negligence, criminal negligence and recklessness as herein has forever barred Plaintiff from being able to seek justice against her rapists, as all forensic evidence has since been destroyed thus causing severe emotional distress and mental injury.

68.    The **Defendant** knew or should have known that his unreasonable conduct risked causing the Plaintiff such emotional distress or mental injury.

69.    **Defendant's** conduct was so extreme and outrageous as to exceed all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

70. **Defendant's** actions and/or omissions caused the Plaintiff severe emotional distress, the severity of which was to such a degree that no reasonable person could be expected to endure it.

### FOR A FOURTH CAUSE OF ACTION
**(Violation of South Carolina Constitution Art. 1 § 3)**

71. The foregoing allegations are repeated herein as if fully set forth verbatim.

72. The Defendants did deprive Plaintiff of her rights guaranteed under the South Carolina Constitution pursuant to Article 1 §3's guarantee of due process and equal protection under the laws.

73. Defendants did deprive Plaintiff of her due process rights by intentionally disregarding her allegations of rape; their refusal to investigate same in contravention to public policy, and allowing the destruction of Plaintiff's property, a SANE kit medical specimen, which was evidence crucial to the prosecution of the alleged rapist.

74. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered damages including pain and suffering, great mental anguish, mental distress, loss of enjoyment of life, loss of income, loss of earning opportunities, and any other damages which may be shown during the pendency of this action.

### FOR A FIFTH CAUSE OF ACTION
**(42 U.S.C. § 1983)**

75. The foregoing allegations are repeated herein as if fully set forth verbatim.

76. At all relevant times as alleged in the Complaint, the Plaintiff was a citizen of the United States, subject to the jurisdiction thereof, and entitled to all rights, privileges, or immunities secured by the U.S. Constitution.

77. At all relevant times hereto and as alleged more fully herein, the Defendants were acting under the color of all applicable statute(s), ordinance(s), regulation(s), custom(s),

or usage(s) of the State of South Carolina in their dealings, communications, acts and/or omissions with respect to the Plaintiff as alleged more fully herein.

78.    The Defendants, individually and acting in concert, in their actions and/or omissions, as more fully alleged and described above, deliberately deprived Plaintiff of her rights, privileges, or immunities secured by the Constitution and laws of the United States and the State of South Carolina, including by way of example and without limitation: Plaintiff's Fourteenth Amendment right to due process of law and equal protection of the laws as more fully described herein.

79.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff's Constitutional rights were violated, and she suffered damages including pain and suffering, loss of enjoyment of life, great mental anguish, emotional distress, loss of income, loss of earning opportunities, and any other damages which may be shown during the pendency of this action.

### DAMAGES:

80.    At this time, Plaintiff would reincorporate and reallege the foregoing allegations as if they were fully repeated herein.

81.    As a direct and proximate result of **Defendants'** tortious conduct as herein described, **Plaintiff** suffered and continues to suffer from extreme emotional fear, suffering, mental anguish, and continuing medical and other special damages.

82.    Plaintiff has suffered, is suffering, and upon information and belief, will continue to suffer severe mental anguish, loss of enjoyment of life, and has been otherwise injured and damaged, all to her detriment.

**WHEREFORE**, **Plaintiff** prays for judgment in such amounts as may be proven at trial, including actual and punitive damages, against the **Defendants** on the aforementioned causes of action, along with the costs and disbursements of this action, to include an award of reasonable attorney's fees, and for such other and further relief as this Court deems just and proper, whether such remedy may lie at law or in equity.

Respectfully submitted this 8th day of September, **2023.**

By:          **SLOTCHIVER** & **SLOTCHIVER, LLP**

/s/ Daniel S. Slotchiver
**Daniel S. Slotchiver, Esquire**
*Fed Bar No. 6106*
**Andrew J. McCumber, Esquire**
*Fed Bar No. 11991*
751 Johnnie Dodds Blvd, Suite 100
Mount Pleasant, SC 29464
(843) 577-6531 (phone)
(843) 577-0261 (facsimile)

And

**PHIPPS LAW FIRM, LLC**

/s/Edward L Phipps
**Edward L. Phipps**
*Fed Bar No. 8053*
571 Savannah Highway
Charleston, South Carolina 29407
Phone: 843-300-4444
edward@phippslawfirm.com

**COUNSEL FOR THE PLAINTIFF**

Charleston, South Carolina